IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01006-RBJ

GEMALTO S.A.,

    Plaintiff,

v.

CPI CARD GROUP INC.,

    Defendant.

---

ORDER

---

This matter is before the Court on defendant CPI Card Group, Inc.'s ("CPI") motion to dismiss plaintiff Gemalto S.A.'s ("Gemalto") patent infringement suit. ECF No. 10. For the reasons described below, the Court DENIES that motion.

## I. FACTS

**A.    The '418 Patent.**

To comprehend this case, one must understand U.S. Patent No. 6,786,418 ("the '418 patent"). *See* ECF No. 1-1 (patent). That patent, which plaintiff Gemalto obtained on September 7, 2004, see ECF No. 1-1 at 1; Compl., ECF No. 1 at ¶8, claims a computerized system for individually customizing microcircuit cards, also known as "smart cards," with customer information, applications, and other data.[1] *See* ECF No. 1-1 at cols. 1–6. Although Gemalto gave this system the deceptively generic title of "Smart Card Customizing System," the

---

[1] Smart cards include microchip-embedded credit or debit cards. Compl. ECF No. 1 at ¶10. The microchip technology used in these cards allows for better security, customization, and functionality over cards with only a traditional magnetic stripe. *Id*. at ¶¶10–11.

customizing system Gemalto designed through the '418 patent was really a purported improvement upon existing card customization systems. *See id.* As the specification explains, Gemalto's Smart Card Customizing System improved prior systems by solving two problems routinely encountered with those existing systems. *See, e.g.*, *id.* at col. 1:52–55, col. 2:3–4.

First, the Smart Card Customizing System allegedly improved how "customizing stations" linked with corresponding customizing data servers during the card customization process. *Id.* at col. 2:3–67, col. 3:1–21; ECF No. 23 at 2–3. In prior art, the patent explained, customizing stations linked to a single customizing data server to retrieve customizing information in a predetermined fashion. *See* ECF No. 1-1 at col. 2:3–4; *see also* ECF No. 10-2 at 6 (prosecution history). This process caused backups and inefficiencies if multiple customizing stations tried to simultaneously link to the same data server to retrieve information while other available customizing data servers went unused. ECF No. 1-1 at col. 2:5–8. To fix those issues, Gemalto created a system that utilized a management interface with what it calls "bi-directional communication" between customization devices and servers. *Id.* at col. 5:1–15 (claim 1). In layman's terms, Gemalto designed an improved, flexible linking system with a "traffic cop" interface that could send and receive information and therefore direct customizing stations to servers that were available to service their request.[2] *See id*. This interface allegedly enhanced functionality by reducing "traffic jams" and therefore wait times during the customization process. *See id.* at col. 2:5–12.

---

[2] Defendant analogizes the Smart Card Customizing System's management interface to all of the following: "a traffic cop directing traffic, an old-style telephone operator directing calls, a DMV queue with people waiting for the next available clerk, even an elevator bank with multiple elevators[.]" Def.'s Mot. to Dismiss, ECF No. 10 at 4. That I use one of defendant's analogies to help describe this interface does not mean that I agree with defendant's ultimate conclusion that the interface is patent-ineligible because it is directed to that abstract concept.

The Smart Card Customizing System's second claimed advance came by separating out the transmission of customizing data from the transmission of encryption data, both of which must eventually be transmitted to smart cards. *Id.* at col. 1:52–67. Prior customizing systems conveyed both sets of data simultaneously via the same communication system (called "the bus," see ECF No. 23 at 3). ECF No. 1-1 at col. 6:30–43. This resulted in transfers of extremely large data loads that could exceed the bus' capacity and presumably stall the customization process. *See id*. By separating out customizing data from encryption data and transferring only the customizing data on the bus and the encryption data via other "hardwire" computer links, Gemalto designed a system that was supposed to be faster than prior systems. *See id*., col. 6:30–43 (Claim 13). It could also handle greater transmission volumes and could be "scaled up" for enhanced customizing flexibility. *See id*. at col. 3:1–21.

### B.     Procedural History.

In this case, Gemalto has alleged that CPI infringed upon the '418 patent's improved customization system with its own smart card personalization system called "Card@Once®." ECF No. 1 at ¶¶20–27. Initially, Gemalto contended that CPI's Card@Once® system infringed Claims 1 and 7 of the '418 patent. *Id.* at ¶¶14–15, 25. On May 25, 2015 CPI filed a motion to dismiss Gemalto's infringement suit. ECF No. 10. That motion, which is the subject of this Order, argues that this Court should invalidate the '418 patent under Section 101 of the Patent Act, 35 U.S.C. § 101. *Id.* at 1–2; *see, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354–55 (2014). Summarized briefly, CPI's argument is that the '418 patent should be invalidated because it is merely directed towards the "abstract idea" of communicating orders through an intermediary (i.e., a "traffic cop"), and that it does not involve any patentable inventive concept. *See* ECF No. 10 at 1–2.

Roughly two months after CPI moved to dismiss Gemalto's suit, Gemalto served CPI with a Disclosure of Asserted Claims and Infringement Contentions pursuant to D.C.COLO.LPtR 4 and the Court's Scheduling Order, see ECF No. 25. Gemalto alleged additional infringements by CPI of Claims 1–2, 4, 7–13, and 15–17 of the '418 patent, see ECF No. 36. CPI subsequently filed a motion to supplement its motion to dismiss to include arguments related to those new claims. ECF Nos. 37, 40. The Court initially denied defendant's motion, but later granted it. ECF Nos. 39, 47. Defendant's original motion and motion to supplement have both been fully briefed.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

### B. 35 U.S.C. § 101.

Whether or not claims within a patent are directed to patent-ineligible subject matter under § 101 of the Patent Act, 35 U.S.C. § 101, is a question of law that can be decided at the motion to dismiss stage even before formal claim construction. *See, e.g.*, *Genetic Techs. Ltd. v. Merial LLC.*, No. 2015-1202, 2016 WL 1393573, at *3 (Fed. Cir. Apr. 8, 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1171 (D. Colo. 2015), *aff'd*, No. 2016-1112, 2016 WL 5899749 (Fed. Cir. Oct. 11, 2016). However, while it is proper to determine at the motion to dismiss stage this question of validity, *see, e.g.*, *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015), "it is appropriate for the Court to take the proposed claim constructions in favor of the non-moving party" at this point in the litigation, *see, e.g.*, *Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*, 114 F. Supp. 3d 192, 199 (D. Del. 2015); *see also Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds by WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014) ("Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule.").[3]

Finally, in a patent case a court may consider documents outside the complaint such as the patent-in-suit's prosecution history, which constitutes a "public record." *Hockerson-*

---

[3] There is a split of authority over whether the presumption of validity for issued patents contained within 35 U.S.C. § 282 applies to § 101 challenges, and therefore whether it must be shown by "clear and convincing" evidence that claims or a patent are directed to patent-ineligible subject matter. *See, e.g.*, *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 255 (E.D. Pa. 2016). Given my resolution of this case, I need not weigh in on this issue, since I find that defendant has not even shown by a preponderance of the evidence that the '418 patent and claims in dispute are directed to patent-ineligible subject matter.

*Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2007); *Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1057 n.8 (D. Colo. 2013).

### III. ANALYSIS

As mentioned above, CPI believes that the Smart Card Customizing System, stripped of its technical jargon, is merely a patent on "the abstract idea of communicating orders through an intermediary."[4] ECF No. 10 at 1. As such, CPI contends that Gemalto's infringement suit should be dismissed because the '418 patent is invalid under the implicit exception to § 101 of the Patent Act barring patents directed to "[l]aws of nature, natural phenomena, and abstract ideas." *Id.*; *see Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354–55 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). Gemalto counters that CPI's reading of the claims of the '418 patent is oversimplified. *See, e.g.*, ECF No. 52 at 2. It argues that defendant's motion should be denied because the claims of the '418 patent on which CPI allegedly infringed are directed to specific improvements on existing smart card customization systems and are therefore readily patentable. *See, e.g.*, *id.* at 3. I agree with Gemalto.

**A. Section 101 of the Patent Act.**

Section 101 of the Patent Act, 35 U.S.C. § 101, broadly grants the power to obtain a patent. It provides that "[w]hoever invents or discovers any new and useful process, machine,

---

[4] The parties appear to agree that Claims 2, 4, 7–10, and 12 depend on Claim 1, that Claim 11 depends on Claim 10, that Claim 15 depends on Claim 13, that Claim 16 depends on Claim 15, and that Claim 17 depends on Claim 16. ECF No. 52 at 5–8; ECF No. 40-1 at 3–6; ECF No. 1-1 at cols. 5–6. To prevail on a motion to dismiss a patent for invalidity, the moving party must either establish that *each* claim is invalid, or that a particular invalid claim is "representative" of the remaining claims. *See* 35 U.S.C. § 282(a); *Brain Synergy Inst., LLC v. UltraThera Techs., Inc.*, No. 13-cv-01471-CMA-NYW, 2016 U.S. Dist. LEXIS 41240, at *14 (D. Colo. Jan. 28, 2016), *adopted and aff'd* No. 14-cv-01471-CMA-NYW, 2016 WL 1211841 (D. Colo. March 29, 2016). It appears that the parties believe that Claims 1 and 13 are the representative claims here, with Claim 1 describing the "bi-directional" interface and Claim 13 describing the hardware improvements to "the bus." *See* ECF No. 1-1 at claims 1, 13.

manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. As the Supreme Court has explained, however, this provision contains an implicit exception that renders claims directed to "[l]aws of nature, natural phenomena, and abstract ideas" unpatentable, and therefore some patents issued based on those concepts invalid. *See Alice*, 134 S. Ct. at 2354–55 (citation omitted).

To determine whether a claim or patent fits this exception, courts follow a two-step inquiry. *See, e.g.*, *Concaten*, 131 F. Supp. 3d at 1172. This is often called the *Mayo/Alice* inquiry or simply the *Alice* inquiry. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2355; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)). First, at step one, a court determines the threshold question of whether the claims at issue are "directed to" one of the patent-ineligible concepts noted above. *Alice*, 134 S. Ct. at 2355. If they are not, the *Alice* inquiry is over—the claims of the patent are valid, at least with respect to subject matter patentability. *See id.*

However, if the court finds that the claims at issue are directed to one of those concepts, the court moves to step two. *Id.* There, it "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Enfish*, 822 F.3d at 1334 (quoting *Alice*, 134 S. Ct. at 2355). In other words, after determining that the claims are directed to an unpatentable concept at step one, the court must determine at step two whether the claims

at issue contain an "inventive concept" which might save them and the underlying patent by rendering their subject matter patent-eligible under § 101.[5] *See Mayo*, 566 U.S. at 82.

With respect to the first step, the Federal Circuit has noted that "[t]he Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea'[.]" *Enfish*, 822 F.3d at 1334. As a result, courts typically decide this issue by analogizing to claims and patents from past cases. *See id.* However, when courts conduct this step one analysis, they "cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involve[s] physical products and actions [that] *involve*[] a law of nature and/or natural phenomenon[.]" *Id.* at 1335 (emphasis in original); *see also Mayo*, 566 U.S. at 71 ("For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."). Instead, a court must decide whether the claim's "character *as a whole* is *directed* to [an] excluded subject matter." *Enfish*, 822 F.3d at 1335 (emphasis added) (internal quotation marks omitted) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

In light of that rule, the Federal Circuit has recently concluded that "all improvements in computer-related technology" that seemingly involve basic or generic concepts cannot be uniformly deemed "inherently abstract" such that they require a step two inquiry to save them. *Id.* Rather, the Federal Circuit has held that claims that "'purport[] to improve the functioning of the computer itself,' or 'improve[] an existing technological process'" do not fail at step one and are therefore patent-eligible because they are directed to a specific improvement in the way computers or technologies operate, rather than the abstract concept itself used to improve those

---

[5] In *Alice*, the Supreme Court found that "a computer-implemented scheme for mitigating 'settlement risk'" was not patent eligible under § 101. *Alice*, 134 S. Ct. at 2352. In *Mayo*, the Court similarly held that a patent on a device that measured the levels of certain metabolites in the blood was invalid. *Mayo*, 566 U.S. at 92.

devices. *Id.*; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (explaining that the key inquiry is to "look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery").

An example of this category of patentable claims is illustrative. In *Enfish*, the Federal Circuit found at step one that the invention of a self-referential table for a computer database (i.e., a spreadsheet that references its own internal entries for content) was *not* directed to an abstract concept. *Enfish*, 822 F.3d at 1335–36. The court explained that based on text of the claims and the specification, the claims of the patent at issue were not directed to merely a computerized version of what was seemingly the abstract and basic concept of storing and organizing information in a table, but rather specifically directed to a self-referential table that *improved* the way spreadsheets operated. *Id.* at 1336–37. As the specification in that case explained, the self-referential system made databases faster as compared to relational databases, which must reference external tables for their content. *Id.* at 1337. It likewise made databases more flexible. *Id.* Significantly, it made databases require a smaller memory to operate. *Id.*

Reaching that step one conclusion, the court in *Enfish* warned that to invalidate this patent under § 101 by holding that it was merely an invention directed to the underlying abstract concept it used to improve databases was to analyze the claims of the patent at too high a level of generality and therefore to oversimplify them. *Id.* Doing so also downplayed the invention's benefits that were touted in the specification and "all but ensure[d] that the exceptions to § 101" that prohibit patents on abstract concepts, natural phenomena, and the like "swallow the rule." *Id.*

Thus, the Federal Circuit went on to hold that because "the plain focus of the claims [was] on an improvement to computer functionality itself, not on economic or other [basic] tasks for which a computer is used in its ordinary capacity[,]" step one of the *Alice* inquiry had not been met and the patent survived the § 101 challenge. *Id.* at 1336. Not a one-off opinion, this holding has been echoed by many courts with respect to other such improvements to computers and technological systems.[6] *See, e.g.*, *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-CV-00119-HSG, 2016 WL 7406494, at *5 (N.D. Cal. Dec. 22, 2016) (finding that claims within a patent on data transfer and synchronization were valid under step one because the claims were "directed *on their face* to an improvement to computer functionality: a more-efficient mechanism for synchronizing data between systems connected to a network by updating only changed data . . . , rather than recopying all information") (emphasis added); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1311 (Fed. Cir. 2016) (explaining that, post-*Alice*, the Federal Circuit itself has "only twice held that a patent was eligible under § 101 based on" this step one inquiry, but that "[t]he scarcity of cases resolved under step one should not be interpreted as an indication that step one creates a particularly high bar").

Distinguishing *Enfish*, others courts have found step one satisfied where claims at issue involved merely the computerization of basic or generic concepts and offered no improvement

---

[6] The Southern District of New York has summarized step one of the *Alice* inquiry quite well in the wake of the Federal Circuit's decision in *Enfish*:

> [I]t is clear that the main thrust behind step one is to determine whether the claim moves beyond a long-understood concept or simply seeks to monopolize one by masking it through the medium of technology. To resolve this question, a court must define the idea, and then ask whether that idea, in all of its generic permutations, essentially constitutes the invention, or whether the invention is to accomplish the abstract idea in a particular way. A court must, in other words, ask whether the claims are directed to a specific implementation to a solution to a problem.

*See Iron Gate Sec., Inc. v. Lowe's Cos., Inc*., No. 15-CV-8814 (KBF), 2016 WL 4146140, at *8 (S.D.N.Y. Aug. 3, 2016).

on that underlying technology.  *See, e.g.*, *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *Va. Innovation Scis. Inc. v. Amazon.com, Inc*., No. 1:16-CV-00861, 2017 WL 64147, at *10 (E.D. Va. Jan. 5, 2017); *Front Row Techs., LLC v. NBA Media Ventures*, LLC, No. CIV 10-0433 JB/SCY, 2016 WL 5404084 (D.N.M. Aug. 30, 2016) (collecting cases).

Again, an example is illustrative.  In *Concaten*, my colleague Judge Brimmer assessed, among other things, whether claims within a patent covering "smart modem devices" on snowplows, which provided Colorado state winter maintenance personnel with weather forecasts and other information allowing for "smart" snowplow treatment recommendations, were directed to the computerization of the abstract concept of collecting information and transmitting it over a network.  *Concaten*, 131 F. Supp. 3d at 1169–70, 1173.  Judge Brimmer found that unlike the self-referential database in *Enfish*, the patent on the device at issue in *Concaten* did "not describe a new device or improvement in any specific device that would convert the scope of its claim from abstract idea to patent-eligible invention."  *Id.* at 1173.  Rather, the device in *Concaten* merely *used* a computer or technology *like* a tool to accomplish some other end.  *See id.*  It did not use that abstract concept to *improve* the computer or technology *as* a tool itself.  *See Fitbit, Inc. v. AliphCom*, No. 15-CV-04073-EJD, 2017 WL 528491, at *4 (N.D. Cal. Feb. 9, 2017).

### B.  The Smart Card Customizing System.

Here, I find that the Smart Card Customizing System falls into the former category rather than the latter.  *See Enfish*, 822 F.3d at 1335–36; *Synchronoss Techs., Inc*., 2016 WL 7406494, at *5. Like the claims describing the self-referential database at issue in *Enfish*, the "plain focus" of the claims of the '418 patent at issue in this suit, read in light of the specification, is on using a generic concept (here, an intermediary) to *improve* how a technological system or device (i.e.,

11

smart card customization) functions.[7] *See Enfish*, 822 F.3d at 1337 (finding the specification's teachings "bolstered" the conclusion that "the claims are directed to an improvement of an existing technology").

On its face, the specification teaches that the Smart Card Customizing System uses a bi-directional interface and a purportedly unique architecture to *improve* prior smart card customization systems: (1) by optimizing how customization stations and customizing servers communicate; and (2) by providing a novel architecture that separates out customizing data traffic from encrypting data traffic to facilitate efficient communication on the system. *See, e.g.*, ECF No. 1-1 at col. 1:53–57 ("One aim of the present invention is therefore to produce a smart card customizing system which *does not have the limitations of the systems of the prior art*, by *improving* the data exchange flows between the customizing lines or appliances and the peripheral encrypting devices.") (emphasis added); *id.* at col. 2:3–11 ("Moreover, *in the prior art*, each customizing station is designed to act on a data server in a predetermined fashion. . . . This causes a wait in the task of the customizing station. *Another aim of the invention is therefore to optimize* the response time of a data server vis-à-vis a request from a customizing station.") (emphasis added).

---

[7] In arguing that the claims in dispute are directed to an abstract concept, defendant asserts that "the claim is all that matters." ECF No. 32 at 2 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)). I disagree. First, I point out that *Phillips* was not a § 101 case. *See Phillips*, 415 F.3d at 1309–10. Furthermore, the Federal Circuit in *Enfish* specifically looked at the patent-in-issue's specification in reaching its holding. *Enfish*, 822 F.3d at 1337. It also clearly explained the step one inquiry as follows: "the 'directed to' inquiry applies a stage-one filter to claims, *considered in light of the specification*, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id.* at 1335 (emphasis added and citations omitted). *But see Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("[C]omplex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts . . . ."); *see also Mantissa Corp. v. Ondot Sys., Inc.*, No. 4:15-CV-1133, 2016 WL 6902419, at *1 (S.D. Tex. Aug. 11, 2016) (rejecting defendant's argument).

The claims at issue are thus directed to an improvement in technology rather than an abstract concept because they "clearly set out what the asserted problems in the prior art were said to be, followed by a description of how the patented invention is said to address those problems." *Kaavo Inc. v. Amazon.com Inc. & Amazon Web Servs. Inc.*, No. CV 15-638-LPS-CJB, 2016 WL 6562038, at *8 & n.16 (D. Del. Nov. 3, 2016). They "mention . . . [a] problem . . . and how the patented invention did what other prior art solutions had not done or could not do." *See id.* In other words, they "purport to improve the functioning of the [smart card customization system] itself[.]" *See Enfish*, 822 F.3d at 1335. Having that focus, they do "not succumb to the abstract idea exception" to § 101. *See id.*

Defendant's arguments to the contrary are unavailing. For starters, defendant largely ignores the unique architecture the Smart Card Customizing System utilizes (i.e. Claim 13) to allegedly improve problems with "the bus" and encrypted data transmission. *See* ECF No. 1-1 at claim 13. If defendant truly wanted the *entire* '418 patent invalidated and plaintiff's infringement suit dismissed, it needed to convince me that the claims related to *that* invention were also directed to an abstract concept. It didn't even try.

Instead, CPI focuses almost entirely on the "bi-directional" interface (i.e. Claim 1) as an abstract concept. However, I find that CPI largely describes those claims and what they accomplish at too high a level of generality, and therefore that CPI oversimplifies the '418 patent. *See Enfish*, 822 F.3d at 1337. It is clear that by so doing, defendant attempts to lump the Smart Card Customizing System in with those patents and claims that focus "on economic or other tasks for which a computer [or technology] is used in its ordinary capacity." *See Enfish*, 822 F.3d at 1336. But, as described above, the plain focus of the '418 patent is on utilizing an abstract concept to *improve* technology—namely, prior smart card customizing systems—and

not on the abstract concepts it uses to do so, which exist in some degree in every technological design or improvement.  *See Mayo*, 566 U.S. at 71; *see also, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-911-JRG-RSP, 2016 WL 4768827, at *9 (E.D. Tex. Aug. 8, 2016), *report and recommendation adopted*, No. 214CV911JRGRSPLEAD, 2016 WL 4732856 (E.D. Tex. Sept. 12, 2016) (recognizing that while the invention at issue could be analogized to a device that merely achieves the function of a traffic light on a highway onramp, "the fact that [the claim] is directed to a purported *improvement* on an existing type of 'traffic metering' in the wireless network" revealed that it was patent-eligible as it was not directed to that abstract concept) (emphasis added).

Finally, I find unpersuasive defendant's attempts to distinguish cases like *Enfish* on the grounds that the claims involved in those cases were directed to *specific* improvements and *specific* implementations, whereas the ones here are generalized and involve generic computer parts.  Again, one only reaches that conclusion if they describe the claims at issue in this case at too high a level of generality.  Furthermore, the Federal Circuit in *Enfish* noted that it was not persuaded that "an invention's ability to run on a general-purpose computer dooms the claims" under § 101.  *Enfish*, 822 F.3d at 1338.  Finally, I find that the claims here, like those in *Enfish*, are indeed "*specific* improvement[s] . . . [and] *specific* implementation[s] of a solution to a problem" as the patent, on its face, makes readily apparent.  *See Enfish*, 822 F.3d at 1339 (emphasis added); ECF No. 1-1 at cols: 1–2.

Accordingly, I find at step one of the *Alice* inquiry that the claims at issue in this case are directed to an *improvement* in smart card customization technology, not on the underlying abstract concept used to achieve that improvement.  They therefore do not fall victim to the

14

implicit exception to §101 of the Patent Act barring patents directed to abstract concepts, and for that reason, defendant's motion to dismiss is DENIED.

## ORDER

For the reasons above, the Court DENIES CPI's motion to dismiss Gemalto's suit on the grounds that the claims on which Gemalto asserts CPI infringes on are directed to an unpatentable, abstract concept.

DATED this 2nd day of March, 2017.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge