1                  IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF COLORADO

3
     Civil Action No. 16-CV-01006-RBJ
4

5     GEMALTO S.A.,

6            Plaintiff,

7            vs.

8     CPI CARD GROUP INC.,

9            Defendant.

10   ------------------------------------------------------------

11                        REPORTER'S TRANSCRIPT
                          Discovery Conference
12   ------------------------------------------------------------

13
             Proceedings before the HONORABLE R. BROOKE JACKSON,
14   Judge, United States District Court for the District of
     Colorado, commencing on the 7th day of April, 2017, in
15   Courtroom A902, United States Courthouse, Denver, Colorado.

16                            APPEARANCES

17   For the Plaintiff:
     PETER C. SCHECHTER and TAMMY J. DUNN, Osha Liang, LLP, 909
18   Fannin St., Ste. 3500, Houston, TX 77010

19   KRIS J. KOSTOLANSKY, Lewis Roca Rothgerber Christie, LLP, 1200
     17th St., Ste. 3000, Denver, CO 80202
20
     For the Defendant:
21   DUSTIN J. EDWARDS and MELINDA K. LACKEY, Winston & Strawn,
     LLP, 1111 Louisiana St., Ste. 2500, Houston, TX 77002
22

23

24
     Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
25                  Denver, CO 80294, 303-335-2108

           Proceedings reported by mechanical stenography;
                  transcription produced via computer.

1              *        *        *        *        *

2      (The proceedings commenced at 9:16 a.m.)

3           THE COURT:  This is 16CV1006, Gemalto versus CPI Card

4  Group.  It's set this morning at the request of the parties

5  for a telephone hearing on a discovery dispute.

6           Who's appearing today for the plaintiff?

7           MR. SCHECHTER:  Good morning, Your Honor.  It's Peter

8  Schechter from Osha Liang for the plaintiff Gemalto, and in

9  the courtroom is Kris Kostolansky.  And also on the phone is

10 my partner Ms. Tammy Dunn who we will be entering an

11 appearance for next week.

12          THE COURT:  Thank you, Mr. Schechter.

13          Who's appearing for the defendant?

14          MR. EDWARDS:  Your Honor, this is Dustin Edwards with

15 Winston & Strawn on behalf of CPI Card Group, and with me on

16 the phone is Melinda Lackey, also of Winston & Strawn.

17          THE COURT:  Thank you.  What is your dispute?

18          MR. SCHECHTER:  Your Honor, it's Peter Schechter

19 speaking.  And I apologize if there's noise in the background.

20 I'm in a noisy place that I -- I've kind of secreted myself

21 away and hopefully it won't be interfering with us.  I'm not

22 sure at this point today right now that there is a dispute.

23 It might actually have been resolved overnight, but we've not

24 been able to confirm that one way or the other.

25          And the background of the issue is that you had

1    instructed and ordered Gemalto to make reasonable efforts to

2    obtain the cooperative deposition of the inventor of the

3    patent in suit, a Francois Maurel in France, and that has now

4    happened.  It was a long and difficult process, but Mr. Maurel

5    has finally agreed.  He is not requiring any compensation, and

6    he offered a number of dates in the month of April.  And CPI

7    has now chosen the last of those available offered dates,

8    which will be April 20th.

9            And in view of the delay that's been occasioned by

10   this issue, we had proposed to the defendants to reform the

11   schedule so that we would get this case done and preserve the

12   trial date that the Court has already set.  We thought that

13   was going to be a rather straightforward thing, but CPI had

14   raised some other issues that they believe now having been

15   offered the dates for Mr. Maurel's deposition, new issues that

16   needed to first be addressed and resolved before that could

17   happen, and obviously with this particular individual we knew

18   that that was going to be a very difficult thing for anybody

19   to accomplish.

20           But I think and Mr. -- and if Dustin will correct me

21   or I'm sure will explain, overnight we have provided some

22   additional information that's been requested, and it's

23   possible that the parties are actually in agreement with how

24   to reform the schedule, in which case we will simply ask for

25   the Court's permission to file a joint or unopposed motion to

1   reform the schedule as the parties have worked out, of course,

2   subject to the Court's availability on any date that the Court

3   is actually required to do anything.  But the whole idea there

4   is to preserve the trial date.

5            THE COURT:  Okay.

6            MR. EDWARDS:  Your Honor, this is Dustin Edwards.

7   Generally -- generally what Mr. Schechter said is correct.  We

8   have worked out dates, proposed dates for the new schedule,

9   assuming Mr. Maurel's deposition goes forth on April 20th.

10  That date is still up in the air.  Lead counsel for CPI, David

11  Bloch, is going to take that deposition, and he's requested

12  from Mr. Maurel whether April 24th will work, so that date is

13  still up in the air.  If Mr. Maurel says no, we will make

14  April 20th work if necessary.  And so I think that the parties

15  have worked on the proposed date assuming April 20th goes

16  forward for Mr. Maurel.

17           And my only comment to the schedule and what I told

18  Mr. Schechter yesterday is it doesn't seem to me to be prudent

19  or necessary to enter a scheduling now unless you want one.  I

20  think we could probably wait until after Mr. Maurel's

21  deposition, to be safe.  I mean, we're taking it in France.

22  It's voluntary.  You know, he's been sort of cagey in terms of

23  getting ahold of him for the last three months.  Who knows if

24  he's going to show up, and if he does show up, who knows how

25  cooperative he's going to be.

                        Sarah K. Mitchell, RPR, CRR

1        So, you know, your original order which is Docket 65

2   takes care of the claim construction dates, because those are

3   teed off when Mr. Maurel is deposed, and then there's no

4   immediate dates after that.  The next immediate date is in

5   June, I believe, for infringement contentions, and so there's

6   nothing pressing after the April 20th date, or April 24th,

7   whenever it goes forward.  So I would propose, unless you want

8   to handle it otherwise, Your Honor, that we wait, and then we

9   would jointly submit you a schedule after Mr. Maurel's

10  deposition.

11       THE COURT:  Well, Mr. Schechter, what do you say to

12  that?

13       MR. SCHECHTER:  That's -- since we're all in

14  agreement that one way or the other the deposition is going to

15  happen on February -- on April 20th, it's not clear to us what

16  additional discretions CPI is asking for in order to hold that

17  up.  So we don't really see any difference between submitting

18  it now or then.  For example, let's -- you know, I mean, if

19  they don't like the answers that he gives, does that mean that

20  the schedule is off?  I mean, is this simply their

21  determination of his cooperativeness or whether he's

22  cooperating or not?

23       We're not representing him.  He apparently is

24  represented by his own counsel, but at least at one point he

25  told us that he was consulting with his counsel about this, so

1    we assume he has counsel.  He's a professional.  He's an

2    executive with another company.  I think we've worked out as

3    we've both said, Mr. Edwards and I have both said, we've

4    worked out the other discovery issues that had been raised as

5    potential roadblocks to that, so there are no more of those

6    issues.  It just seems to us this case is in limbo, and the

7    longer we have no schedule really or no workable schedule

8    because the current schedule is not workable, the more

9    difficult -- the more difficulty we're going to have going

10   forward.

11          THE COURT:  Well, look --

12          MR. KOSTOLANSKY:  Your Honor, I have a draft of the

13   dates that the parties have agreed to, if you'd like me to

14   tender that to the Court.

15          THE COURT:  Sure, sure.

16          MR. SCHECHTER:  It's Peter Schechter again.  I recall

17   that during our initial scheduling conference the Court

18   expressed a preference for actual dates rather than dates that

19   tee off of other dates, and we had prepared the case

20   management order in that -- in that fashion, and so we --

21   we've endeavored to do the same thing here, to actually have

22   dates in here that make sense that the parties can live with,

23   because we were obviously going to run into some issues with

24   holidays and experts and availability of experts that we

25   expect to have problems with.

1          So the sooner the better we think for all the

2    parties' purposes to keep this case on track.  It's already

3    going to be tight, because we've lost a considerable amount of

4    time in the briefing schedule because of this issue with

5    Mr. Maurel, but now it's resolved, let's just resolve it

6    completely, and get on with it.

7          THE COURT:  Yeah, all right.  So I've got this

8    proposed revised schedule.  And just looking at it, if I go to

9    the end, you're suggesting moving the dispositive motions

10   deadline to January 5th.  Now, think about that.  January 5th

11   you file some dispositive motion.  Their side has 21 days to

12   respond, plus three for service.  So you're talking about end

13   of January, even assuming that there isn't a request for an

14   extension which seems -- almost --

15         MR. SCHECHTER:  I'm sorry, Your Honor.  I think those

16   dates have been moved so that the dispositive motion filing

17   date is, if I'm not mistaken, December 8th.  So that we've

18   tried to -- unless I'm thinking about this wrong.  Let me

19   look.

20         MR. EDWARDS:  This is Dustin.  I think that that's

21   right, Peter.  What we agreed on --

22         THE COURT:  I see.  I see.  I see.

23         MR. SCHECHTER:  Right.  Right.  So we're only

24   proposing slipping the dispositive motion deadline one week at

25   this point, and in order to avoid -- so that helps the parties

1   with respect to access to their experts over the Thanksgiving

2   period, and then we've also added a week to the response --

3   the dispositive motions period to have those due.  The

4   responses are due on January 5th.  Again, because we expect

5   we're going to not have very cooperative experts over New

6   Year's and Christmas.

7           THE COURT:  I see that now.  So you've got responses

8   on January 5th.  You don't have anything for replies, so

9   you're not going to have replies apparently.  So on January --

10          MR. SCHECHTER:  They weren't --

11          THE COURT:  On January --

12          MR. SCHECHTER:  They were not in the original

13  schedule, Your Honor.

14          THE COURT:  On January 5th then you think your

15  dispositive motion will be ready for the Court to review it,

16  and --

17          MR. SCHECHTER:  Yeah, that was the original plan,

18  that there would be no replies.

19          THE COURT:  Okay.  Then going back to the beginning,

20  I don't care about your dates.  Your opening construction --

21  claim construction brief on May 11th, response June 1st, reply

22  June 8th.  And we'll give you a deadline now so that you'll

23  know when you're going to have your hearing, or maybe we

24  already have.  You say July 14th.  Is that something we have

25  given you or did you just pencil that in?

```
 1              MR. SCHECHTER:  No, we penciled that in, because,

 2   again, when the Court ordered Gemalto to make best efforts to

 3   get the inventor, the order that was tendered and accepted by

 4   -- tendered by the defendant had this language about one month

 5   after the joint motion for determination.  So, again, we've

 6   gone back to your initial comments at the initial scheduling

 7   conference and took a guess at a date, which is July 14th.

 8              THE COURT:  All right.  Julie, if they're briefed up

 9   on this Markman issue by June 15th, when can we give them a

10   day after June 15th?

11              THE COURTROOM DEPUTY:  One moment.

12         (Pause in the proceedings.)

13              THE COURTROOM DEPUTY:  We're talking 2017, right,

14   Your Honor?

15              THE COURT:  Right.  Talking this summer.

16              THE COURTROOM DEPUTY:  We actually could do July 14th

17   at 9 o'clock or the 13th at 9 o'clock.

18              THE COURT:  There you go.  You can have the 13th or

19   the 14th at 9 o'clock of July.  Which do you want?

20              MR. SCHECHTER:  Makes no difference to plaintiff.

21   Let's say July 13th.

22              MR. EDWARDS:  Let us take a look real quick.  Either

23   one is fine with us, Your Honor.

24              THE COURT:  Well, I guess it's going to be July 13th

25   then.  So you've got a schedule here.  Is there any reason why
```

1   I shouldn't just agree with it?

2          MR. SCHECHTER:  Plaintiff doesn't see any reason why

3   not.

4          MR. EDWARDS:  Your Honor, this is Dustin Edwards

5   again.  I can reiterate what I said earlier.  It doesn't seem

6   like there's any immediate need to do it.  We can wait until

7   after Mr. Maurel's deposition to make sure it goes forward and

8   then submit it jointly to the Court.  Like I said, it's taken

9   three months for us to get him to agree to be deposed, and who

10  knows what's going to happen when we get there.  And so if

11  you're inclined to do it now, Your Honor, I would just ask if

12  we -- if anything happens at the deposition we're allowed to

13  come back to you and revisit The Hague convention issue.

14         THE COURT:  Mr. Edwards, you seem like a worrier.

15  Are you always this nervous about things?

16         MR. EDWARDS:  Mr. Maurel gives us lots of reasons to

17  be nervous.

18         THE COURT:  Well, at least you've got a good solid

19  not nervous hand sitting here in the courtroom to make you

20  feel better.  Let's go ahead and get this order, but then I

21  want to talk about it a little bit.  In my experience, the

22  so-called claim construction briefs tend to be of relatively

23  little value to me even to the point that I may or may not

24  even need them.  What I'm saying is if you just feel the urge

25  and the need to send some associate to the computer and

                    Sarah K. Mitchell, RPR, CRR

1    generate some briefs, I can't stop you, but that isn't going

2    to be terribly helpful to me.  Here's what is helpful.

3          First of all, a very simple chart.  You've prepared

4    them, you've seen them.  You know what I'm talking about.

5    Before we even get to the chart, you narrow down the claims

6    that need to be construed to the handful, at most, of the

7    really critical ones.  It isn't helpful to give me 20 terms.

8    You can figure out which terms are really important.  Narrow

9    it down and then prepare your chart.

10          On the column on the left should be the list of the

11    handful of critical terms.  Immediately to the right will be

12    the plaintiff's proposed construction.  Immediately to the

13    right the third column will be the references in the

14    specification or the history that support your interpretation.

15    Then we get the next column, the defendant's proposed

16    construction.  And then the next column is their references to

17    intrinsic evidence, so that I can -- I can follow your

18    direction, your map, as you will, as to where in the

19    unreadable patent I find somewhat readable support for your

20    positions.

21          If you have extrinsic evidence, I'm perfectly happy

22    to receive it, because the odd thing about your world is that

23    you want me to step into the shoes of a person of reasonable

24    skill in the art when I interpret your terms, but, of course,

25    I have no skill in your art, and if there are individuals that

1   do that that can help me, I'm willing to listen to what they

2   have to say.

3          So what is helpful to me is the chart, which is a

4   road map.  If you want your paralegal to spend a little time

5   on the file, you could even have it color-coded to make it

6   even easier for me to go right to the source, but that's not

7   required.  And then come in prepared to present your argument

8   based on the chart and the intrinsic, and if appropriate,

9   extrinsic evidence.

10          The briefs, in my view, add very little to that.  To

11   some extent they just repeat things that are fairly commonly

12   known.  You know, what claims construction is and the *Phillips*

13   case and all of that.  I don't -- that's like briefing over

14   and over what Rule 56 of the Federal Rules of Civil Procedure

15   means.  It's not helpful.  I've been there, done that.  And

16   then if you're just arguing what the terms mean, that just is

17   going to duplicate what you argue when you come in here for

18   your hearing.  So I'm suggesting that at a minimum you keep

19   your briefs very short, and if you have sufficient courage,

20   you can eliminate them entirely.  Won't bother me a bit.

21          Now, what else can we talk about today that's helpful

22   to you?

23          MS. LACKEY:  Your Honor, this is Melinda Lackey.  I

24   have a brief question about the chart.  Would you like us to

25   include the quotations to the support in the chart or --

1            THE COURT:  If you --

2            MS. LACKEY:  -- or just a citation by the information

3     we cite to behind the chart?

4            THE COURT:  No, you don't have to include the

5     quotations, and the reason is that if you try to do that,

6     you're going to have to use such small font that I won't be

7     able to read any of it.

8            MS. LACKEY:  Exactly.  Okay.  Thank you.  And then

9     would you like us to submit that on the day that currently

10    says opening briefs are due?

11           THE COURT:  That would be nice, but --

12           MS. LACKEY:  Okay.

13           THE COURT:  Yeah.  That would be helpful.

14           MS. LACKEY:  Thank you.

15           THE COURT:  Anything else?

16           MR. EDWARDS:  If we're done with the claims

17    construction, Your Honor, I have one issue related to a

18    discovery dispute between the parties.

19           THE COURT:  Who are you?

20           MR. EDWARDS:  Oh, I'm sorry, Your Honor.  This is

21    Dustin Edwards with CPI.

22           THE COURT:  The nervous Nelly.  Mr. Edwards, what is

23    your dispute?

24           MR. EDWARDS:  So I think the parties have worked in

25    the last couple days to narrow down the disputes.  I think

1  we've resolved almost everything except for one issue.  Your

2  Honor, we submitted an interrogatory and a request for

3  production to Gemalto asking them for technical documents on

4  the commercial embodiment of their patent, which is called the

5  Dexxis system, D-e-x-x-i-s.

6         And their response to both the interrogatory and

7  request for production is to say that they'll make the

8  documents available for inspection at their headquarters in

9  France.

10         THE COURT:  Well --

11         MR. EDWARDS:  And so -- and so what we would like,

12  Your Honor, is for them to produce those documents to us here

13  in the United States.  The only reason they've articulated

14  that they can't do it is because they're sensitive and

15  confidential, and we have a protective order in the case, so I

16  don't see why that should be an issue.

17         THE COURT:  So, Mr. Schechter, why can't you give

18  them copies of those documents instead of making them go all

19  the way to France?

20         MR. SCHECHTER:  There are a number of issues, Your

21  Honor, that go to this.  First of all, the technical workings

22  of a commercial system developed many years after the patent

23  was applied for -- this issue had been raised initially as a

24  roadblock to the claims construction process, which we had

25  worked out as has been said.  These are not merely

1   confidential documents.  We've produced loads and loads and

2   loads of confidential documents pursuant to the protective

3   order.

4            These are the most sensitive documents about how

5   credit cards are created including source code, including

6   technical security details, and Gemalto's security department

7   simply will not allow these documents out of their building.

8   They've not produced them to their outside counsel, and they

9   won't.  We've tried.  We've talked to them, and they've said,

10  We're not sending these documents to the United States.  You

11  can come look at them under supervised conditions, but for

12  this, which is the commercial embodiment of a system that is

13  what is used to create the encrypted credit card information,

14  they're not willing to let that out of the plant, and for good

15  reason.

16           The balancing of the need for this information and

17  the relevance of this information with the burden and the

18  security issues that are involved in this information we

19  believe weigh strongly in favor of allowing them to come see

20  the documents, which we offered on March 9th and they've not

21  ever requested to go look at them, and they are still

22  available as we offered since March 9th, but they've not

23  requested, as I said.

24           So we think in this particular case due to the lack

25  of relevance of this information and its incredible security

1   issues that the arrangement that we proposed is both fair and

2   reasonable and strikes the right balance between the necessity

3   for the information, the relevance for the information, or

4   lack thereof, and the sensitivity.  So we have no problem with

5   the Court's protective order, with the protective order that

6   the parties have been operating under, but this limited

7   category of documents --

8            THE COURT:  Mr. Schechter.

9            MR. SCHECHTER:  Yes, Your Honor.

10           THE COURT:  You and Mr. Edward both seem like you

11   enjoy hearing your own voice.  You're talking more than I need

12   to hear.  You're repeating yourself.

13           MR. SCHECHTER:  Sorry.

14           THE COURT:  Mr. Edwards.

15           MR. EDWARDS:  Yes, sir.

16           THE COURT:  What type of person would have the skill

17   and ability to review these records?

18           MR. EDWARDS:  Well, Your Honor, we don't know.  We

19   don't know what they contain.  We asked Mr. Schechter that

20   yesterday, and he said he didn't know.  We only got an e-mail

21   just this morning describing that they were, you know,

22   basically technical documents, the earliest of which are 2008.

23   The only thing we do know is that they admitted in their

24   response to our discovery request that they're responsive to

25   them.

 1          If it helps, Your Honor, we're not looking for source

 2   code.  We just want to know how their product operates, the

 3   design and operation of their product.  And so, you know,

 4   they've responded to an interrogatory saying that we can go

 5   examine their documents in France.  I don't understand why

 6   they just can't just provide a narrative response to the

 7   interrogatory.  I mean, that's one alternative.

 8          And the other alternative -- I mean, the other point,

 9   Your Honor, that Mr. Schechter made was he was talking about

10   whether they're relevant or not.  They never objected to

11   relevance.  They never objected to they were super secret.

12   They didn't make any of these objections in response to their

13   interrogatory.  They only said that for the first time

14   yesterday.

15          THE COURT:  Mr. Edwards.

16          MR. EDWARDS:  Yes, sir.

17          THE COURT:  I asked a pretty simple question.

18          MR. EDWARDS:  Yes, sir.

19          THE COURT:  What kind of person is it that will

20   review these documents?  Is it a lawyer?  Is it an engineer?

21   You tell me.

22          MR. EDWARDS:  It would be outside counsel and our

23   experts, Your Honor.

24          THE COURT:  Okay.  And who's your expert?

25          MR. EDWARDS:  We're currently -- we don't have one

1    engaged yet, Your Honor.  We're currently working to engage

2    one of two experts.

3           THE COURT:  All right.  So here's what I'll do.

4    Recognizing that Gemalto, after all, filed the lawsuit, and

5    it's rather cheeky of them to say, okay, we're the plaintiff,

6    but you're not going to look at these documents, they're too

7    sensitive, but there's a solution.  It's an easy one.  One of

8    your outside counsel, either that's you, Mr. Edwards,

9    Ms. Lackey, one or the other I assume, and whichever expert

10   you retain may go to France and look at the documents.  All

11   expenses will be paid by Gemalto for that trip.  That means

12   your airfare, your lodging, your meals.

13          All reasonable expenses, including business class

14   airfare roundtrip for two people will be paid by Gemalto and

15   will be paid by Gemalto within ten days after receiving your

16   invoice.  That way you get a nice trip to the City of Light,

17   and you can enjoy yourself with your expert over there, have a

18   couple of glasses of champagne on Gemalto, look at the

19   documents to your heart's content under supervision, and

20   everybody's happy.  Any questions?

21          MR. EDWARDS:  Yes, Your Honor.  I actually raised

22   that with Mr. Schechter yesterday, and the one issue I have or

23   the one question I have is are we going to be allowed to make

24   copies?

25          THE COURT:  Well --

1              MR. EDWARDS:  And are they --

2              THE COURT:  If they won't let you make copies, then

3    they have telephones in France.  You can conduct a hearing --

4    set up a hearing just like this one and explain why you need

5    copies and what you need copies of, and they can say why they

6    won't let you have them, and then I'll rule.  But we don't

7    have a dispute yet.

8              MR. EDWARDS:  Okay.  And then in terms of the

9    documents, if they're in French, Your Honor, are they

10   obligated to provide those to us as translated documents?

11             THE COURT:  I don't see why they have to do that.

12             MR. EDWARDS:  Okay.

13             THE COURT:  But if --

14             MR. EDWARDS:  So we'd be required --

15             THE COURT:  If they don't, then you take an

16   interpreter with you also on their nickel.  It's getting more

17   and more expensive by the minute.  They might decide at some

18   point that there's a cheaper alternative.  You take somebody

19   that speaks French that can translate them with you, and then

20   you'll have a jolly old time in Paris.  Maybe -- maybe

21   Mr. Kostolansky is going to be needed over there as well, but

22   that's up to Gemalto.

23             Now, what else, gentlemen and lady?

24             MR. EDWARDS:  Nothing more from CPI, Your Honor.

25             MR. SCHECHTER:  Nothing more from Gemalto, Your

1  Honor.

2          THE COURT:  Seems to me, frankly, that if Ms. Lackey

3  is the one that's going to have to be preparing charts, maybe

4  she's the one that ought to get a trip out of this, but that's

5  just a comment.

6          MS. LACKEY:  I'll take that as an order, Your Honor.

7          MR. SCHECHTER:  The good news, Your Honor, is that

8  both of our firms have offices in Paris.

9          THE COURT:  I guess that's good news.  Good-bye.

10          MS. LACKEY:  Thank you, Your Honor.

11          MR. SCHECHTER:  Thank you, Your Honor.

12          THE COURTROOM DEPUTY:  Court is in recess.

13      (The proceedings were concluded at 9:46 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3          I, SARAH K. MITCHELL, Official Court Reporter for the

4   United States District Court for the District of Colorado, a

5   Registered Professional Reporter and Certified Realtime

6   Reporter, do hereby certify that I reported by machine

7   shorthand the proceedings contained herein at the time and

8   place aforementioned and that the foregoing pages constitute a

9   full, true and correct transcript.

10         Dated this 9th day of June, 2017.

11

12

13

14           _____/s/ Sarah K. Mitchell_____

15                   SARAH K. MITCHELL
                    Official Court Reporter
16            Registered Professional Reporter
                 Certified Realtime Reporter
17

18

19

20

21

22

23

24

25

                    Sarah K. Mitchell, RPR, CRR